May I please the court? My name is Steve Lechner, and I'd like to reserve two minutes of my time if possible. I represent Don Eno, a disabled veteran on a fixed income. Congress passed the Equal Access to Justice Act to provide for people with limited means the ability to have counsel represent them in defending against overreaching by the federal government. This case is a perfect example as to why Congress passed EJIA. Here, the Forest Service subjected Eno to a five-day evidentiary hearing and a nine-year ordeal in an effort to eliminate the right to mine on the Hound Dog claim, presumably so it could sell the travertine itself. Although Eno prevailed, he has been denied an EJIA award because of two errors of the law. First, the adjudication under the Mining Claims Rights Restoration Act was not for the purpose of granting a license. The plain language of the act, the order itself, and this Court's decision in Western Watershed Project B, I belay prove this point. Second, the adjudication was under 5 U.S.C. 554. The Supreme Court's decision in Wong Yang Sung and this Court's decision in Collard prove this point. It's undisputed the Equal Access to Justice Act does not apply to adjudications for the granting of a license. This is eminently reasonable, because when somebody applies for a license and is granted a license by the federal government, they should not receive their attorney fees. However, that did not occur here. First, the mine of the — Because it was just a notice of location that's filed under the mining law, 30 U.S.C. 22, and it's just a notice of a location. It was under the mining law. It wasn't an application. He didn't — it wasn't an act of applying. It was an act of exercising the statutory — But functionally, you file that. It starts the process by which you may get the right to mine. And isn't that functionally like applying for a license? Well, the right to mine existed prior to location, because the right to mine exists. Congress passed 30 U.S.C. 22. The right to mine exists prior to — because you have to go out and make discovery before you can locate a claim. And discovery necessarily means removing minerals for assaying to determine whether you've located a valuable mineral deposit to allow you to make a location, which is what occurred here. But what about, you know, in the prior case in U.S. v. Hook, where they basically said, we observed nobody had a right to conduct the mining operations to remove minerals, not even Eno himself? Well, it's because once the Forest Service requested the hearing and the Department of Interior issued the notice of the hearing, it suspended mining until the hearing was held. The act clearly says that the right to mine — But the mine — but it was suspended already, right? You couldn't have mined during the 60 days after filing the notice. No, I could mine before I made location. Before I filed the notice of location, I could mine. And then if there was no hearing or they didn't send notice of the hearing within the 60 days, I could still mine. If they sent a tardy notice after the 60 days, I could still mine until after the hearing. So the mine — the right to mine, the statutory right to mine that Congress granted was merely suspended during the adjudication. But the MCRRA order, in it the Secretary explicitly granted Mr. Eno general permission to engage in placer mining. I guess, how is this not a form of permission under Section 5018? First, the act itself, under 30 U.S.C. 621b, does not use the word grant. It uses the word provide. The Secretary shall issue an order that provides one of three alternatives. Here, the alternative was a general permission to engage in placer mining. And, yes, I recognize that I parroted all the IBOA decisions under this act that said that the order grants a general permission. But the order doesn't grant. The word grant is not in the act. So the order provides for a general permission. Well, but — Yes, the order says permission. But to understand what that means is you have to look at the act and what the order does. The act, Congress — I mean, the IBOA is recognized as not a very well-drafted statute. But Congress used the word permission in there to distinguish between the other alternative, which was the prohibition. So there's a prohibition of mining or a permission for mining. But it wasn't — it wasn't like the Secretary granted any new rights. Under the order, you don't get any new rights. It just says general permission to engage in placer mining. The rights are granted under 30 U.S.C. 22. Those rights came from Congress, not the Secretary. No, but whatever right there was, you don't have a right absent this permission once the notice has been given to mine. But if there was no hearing — if there was no hearing, nobody would have said that the Secretary granted permission. That doesn't matter. Then we wouldn't have any — then we wouldn't have a hearing. Sorry. I'm sorry. It seems like it gave general permission. I don't know what word you want to use. We don't want to use grant or provide. I mean — Well, the statute says provide. Everybody uses grant. But that — the grant word is not the important thing. The first thing — But you're the one — The important thing is — You were the one arguing the grant was important, that it didn't say it. So I guess I'm a little confused. Well — Because it looks — I just want to make everybody clear that the statute doesn't say grant. What we have to look at was what was — and this is under this Court's decision in Western Watershed v. I.B.L.A. — you look at what the purpose of the hearing was for. Here, the statute clearly states that the purpose of this hearing to determine whether placer mining operations subject to all — okay, it doesn't — placer mining operations, whether they would substantially interfere with other uses of land. That is the statutory purpose of the hearing that Congress set forth. And if they don't, you get permission, which is a license, right? No, it's not a license. It's not revocable. The order is — So why does a license have to be revocable? I mean, where does it say — Well, the APA contemplates that licenses are revocable. Well, right, they could be revocable, and there are procedures and things you've got to do. But why does that mean they always have to be revocable? Because the common understanding of a license is revocable. Do you know a permanent license? I mean — A bar license is not permanent. Logically, I don't know why — But they can be revoked. Every license that I know of can be revoked. The ideal situation is a grazing permit. It can be revoked. The APA looks at — looks at — says — contemplates that licenses are applied for and they're subject to revocation. I mean, do we have any — Moreover, moreover, licenses are personal to people, for like a license to practice law or a grazing permit. It's personal to the livestock operator. This order is not because it's recorded in the county records. It attaches to the claim. It runs with the land. If the claim is ever transferred, that order automatically is conveyed to the new owner of the — of the mining claim. Oh. So it has no attributes whatsoever. Do we have a dictionary definition, a statutory definition anywhere where it says a license is a temporary thing that is bound to a person that you can point us to, so we know that license has to be limited in that way? Well, you can look at the APA, and APA provides for under 5 U.S.C. 558C. It applies for applications for licenses, and it also provides for revocation of the licenses. Black's Law Dictionary supports it, and every — in the common — the common understanding of a license, and if you look — What's the definition in Black's Law Dictionary that supports it? It's a temporary right to engage in an activity. Does it say temporary in Black's Law Dictionary? Well, I don't have all the definitions in front of me. But your — A license — do we know of any other permanent license? I mean — I don't know of any, and I — all I can look is what are other types of licenses that are issued by the Federal agencies. You've got, like, an oil and gas lease, that's certainly temporary. There's a 10-year primary term. You have a grazing permit, 10-year term. But those things, those things are issued by the agency. The rights come from the agency itself. Here, the right to mine came from Congress. All the secretary did when it issued the order was lifted the suspension, and therefore — and Melander says, you know, has all the rights that any other mining claimant has under the mining law. The order doesn't set forth any terms and conditions of the right. You have to look at the mining law. Well, what do you think — what do you think the right is he started with? The right to mine? That he succeeded to, I should see. Yes. Before the notice and the hearing. Well, it was a property interest, because it's an unpatented mining claim. So his property interest is — he has a property interest in a mining claim. Yes. Correct. It was a quick claim to him. He required a property interest, and the essential stick in the bundle of rights making up that property interest is the right to mine, because without the right to mine, people cannot hold mining claims. You have to have the intent to mine to hold a mining claim. Right. But that doesn't tell whether you need a license then in addition to that or permission to mine. Well, the — Because, see, the fact that he had a claim and that it devolved to him under this very specific statute puts him in a different position than somebody who might have gotten a claim under the general — Right. I mean, he gets it under the power statute. He gets — well, yes, but the Mining Claims Rights Registration incorporates the mining law. The mining law says people can go out on public lands and locate a claim. You have that as a property right, and in that right is the right to mine. The Secretary looked at it and said because the Forest Service didn't satisfy its burden of proof, he essentially lifted the suspension, granting a, you know, providing for a general permission to engage in placer mining, but that doesn't mean anything if you don't look at the statute where the right to mine was conferred, and that came — But the right — That came from Congress. You just said it right now, though. You know, it seems like the plain language of the MCRA says you have a right — compels the result because he knows right to mining is contingent on the Secretary of Interior granting permission. No, if the Secretary didn't issue an order, if the Forest Service hadn't requested a hearing, Eno could have started mining on the 61st day after location, or his predecessor could have. So the Secretary in that situation doesn't do anything. You can't say the Secretary granted a license when it doesn't hold a hearing. Well, it's — So you can't turn it — It's statutory inaction, and as a consequence of that, certain rights may be obtained. But absent that, you have this period as here I have this piece of property, which I got under this POWER Act, and now something's going to happen. Either the Secretary does — and right now, I don't have — up until 60 days, I don't have a right to do anything on it, right? It's suspended. Well, we're — The right exists, but it's merely suspended. Well, I guess that's a question of language, so we'll just say that it's suspended. Well, Congress used the word suspended. Suspended. If nothing happens, it kicks back in, correct? The right can be exercised. But once there's notice and then there's this procedure, because there's a claim that there's going to be a problem with the mining, then you need a license, don't you? No, it's not a license, because all it did is lift the suspension and means that Eno can exercise all the rights that he has under the mining law. It wasn't giving him permission. It wasn't like any other Federal license that I can identify. And moreover, if you interpret the Mining Claims Rights Restoration Act as granting a license, no miner would have ever gone out and located a claim at a POWER site because nobody wants to get a license from a Federal agency when they can go outside the POWER site and get a full statutory right from Congress. So if you interpret the Act like that, you've defeated the purpose of the Act, because the whole purpose of the Act was to open up 7 million acres of land under the mining law. These lands were already closed. I'm really confused by that. So whether we call this a license or not, Mr. Eno went to this area knowing that he might have to have this hearing and go through this procedure. I mean, are you saying that whether he got attorney's fees for this hearing are going to drive whether he would even mine in this area? No. This isn't really about attorney fees. This is really about the district courts messing up the mining law by suggesting that a miner gets a license. The miner doesn't get a license. But you just said if someone had to get a license, they wouldn't do this. But that's just a term on it. Nobody knew they were getting a license until the I.B.L.A. came out with this goofy idea. The Forest Service didn't know there was a license. They never argued that. The I.B.L.A. pulled this out. But the only thing that turns on whether we call this a license is whether you get attorney's fees. Everything else was clear, right? He would have to file his notice of claim, and then the Secretary could require there to be a hearing. He would have the hearing. Ultimately, he got permission. So are you saying he wouldn't have even tried to go into this power area if he thought that might happen? Well, now the people know that under this Act that you're only going to get a license if the Forest Service requests a hearing. Who's going to go out and get a license? I mean, you know. Well, no, what you know when you get this is that you're at risk that there's going to be some, that the claim on which you sit is going to have some environmental or other, some other degrading aspects, and therefore it might be a pig and a poke. I mean, you know that from day one by reading the statute, don't you? There's an additional hurdle to overcome. But the use of the word license would defeat the purpose of the whole Act, because nobody's going to locate it. What if we call this a license but gave you the fees anyway? I mean, imagine that. So we call it a license, but we give you the fees. You're saying the fact that we call it a license is going to make people not want to mine here, even though mining could be really valuable? Yeah, because the common understanding is in mining it's revocable. But this is not revocable. This attaches to the mining claim itself, and it's there forever. I mean, but you've got to be a lawyer to understand that. And the small miners don't understand that. So that's why I think that it would defeat the whole purpose of the mining law. Real quickly, I want to address the other argument and whether this was under — this adjudication was under 554. If you look at the Supreme Court's decision, Wong v. Young, this Court's decision in Adams v. Whitmer, and this Court's decision in Collard, it was clearly, the adjudication was clearly under 554. If that's not persuasive, then we would win under this Court's decision in Marathon and Chevron, because the agencies interpreted it that manner. Thank you very much. Good morning, Your Honors. My name is James Masonet. I'll be arguing today on behalf of the Federal Defendant's appellees. As you know, this is a case about attorney's fees. Mr. Eno participated in a public hearing held under the Mining Claims Rights Restoration Act, what's known as a PL 359 hearing after the public law number of the Act. And the question is whether he can now recover his fees for that hearing under the Equal Access to Justice Act. And the answer is he can't. EJA draws a bright line, and Mr. Eno falls outside that line for four reasons. First, as the Court has acknowledged, he can't recover his fees because EJA expressly says you can't recover fees for an adjudication that was for the purposes of granting a license. And the general permission that Mr. Eno received at the end of this PL 359 hearing was a license under the very broad definition given to that term by the Administrative Procedure Act. So let's stop there. If he comes into the hearing with some bundle of rights, by having the notice, whatever rights he has are suspended, right? That's not how I would conceptualize the issue, Your Honor. Is that the language that is used? No, Your Honor. It's not the language that's used in the Mining Claims Rights Restoration Act. What Mr. Lechner is arguing about is the mining law of 1872 and the regular process that applies to locating claims that are not on power sites. What we have here is an additional condition that was imposed on by Congress in the Mining Claims Rights Restoration Act. But you don't really need a license because if the government doesn't do anything, then you get to mine. Is that right? If the government doesn't do anything, you get to mine after the 60-day period has elapsed. After 60 days. That's right. So it's kind of an odd argument to make that if the government doesn't do anything and you get to mine, then the government is not giving you a license at that point, right? Right. So let's just stick with the pre-60 days. I think we can all agree that in a lot of ways this is not what we would intuitively think of as a license. And the fact that it is contingent. Well, I'm asking really about that period where the government doesn't pop on the scene and we don't get the notice and we don't have a hearing of some sort. Yes, Your Honor. So at that point, at the end of 60 days, nothing has happened. So what happens in your view legally at the end of 60 days? So to have the property rights that Mr. Lechner is talking about, you have to have location and the discovery of a valuable mineral resource. Right. So if you have that, then after the 60 days have passed, you have your property rights under the Mining Law of 1872 and the Mining Claims Rights Restoration Act. So then you're done. And the rights that you have were inherent in the claim that you got, right? They came with the claim that Mr. Eno succeeded to by law? They were inherent in that subject to the further condition. So inherent is the – is it inherent in there that there's really no restriction on his place or mining unless the government intervenes? Yes, that's correct. Well, there are further environmental regulations, but that's not what's at issue here. Right. Yes. Once the 60 days have passed, there are no – then he has the same mining rights he would have if this was not a power site. Right. So then how is it that if you have those rights to begin with, and now you have a hearing and the government says, well, you know, we obviously have these problems, so we do or don't want it to go forward, but they say, okay, well, guess what? If we did nothing, you would have these rights, but actually now we've had a hearing and you have these rights also. What's the government granting a license to if you already had those rights? Your Honor, there are all kinds of requirements under both the old Mining Law of 1872 and the Mining Claims Rights Restoration Act. There are requirements on how you have to locate the claim, where you have to file the papers. If you don't fulfill those, you don't gain property rights. Right. Now, with the Mining Claims Rights Restoration Act, because Congress was concerned that placer mining and just placer mining at these sites might affect these power sites and other uses of the land, they added one more condition before you gained those property rights, and contingent on the Secretary noticing a hearing. So it is a strange structure where you only need this license, as the APA defines that, if the Secretary notices a hearing. And the reason we got to where we got to is because before the Mining Claims Rights Restoration Act, the Federal Government was very — was not heavily involved in administering these mining claims. The Forest Service and Interior might not have even received notice of these mining claims. And what Congress didn't want to do was — I understand all that. What I'm really trying to figure out is, you know, what happens in that — after the 60-day period? What — you know, you have these rights given to you by the mining — the various mining laws. And then the hearing process kicks in. So how can they give back to you something that you already had, absent a negative finding? Right. Well, there's two competing visions of the statute here. One is a vision where — Mr. Lechner's vision, where he gained the property rights when he located it, but they're suspended, and then he gets them back at the end of the 60 days or at the end of the hearing or they're prohibited. But that means that this hearing, this PL359 hearing, had to be a mining contest, right? It had to follow those procedures. The alternative vision is that Congress didn't give you the property rights when you locate your claim on a power site. Instead, it imposed this one additional condition, that you have to wait 60 days to get your rights. Or, if the Secretary notices a hearing, then you have to go through this statutory PL359 hearing and wait until the end of that and get a general permission. Can I propose a — Could I just add one other thing there? Is that — so then what you're saying is that whatever rights you might have gotten don't solidify or accrue for a minimum of the 60 days, and then they may or may not, depending on whether there's intervention. That's exactly right. And Mr. Eno knew that when he located his claim on a — his plaster mining claim on a power site. So I had a question about maybe whether there's a slightly different way to look at this. So could we look at it that the — you have the general mining law. The MCRA comes along and says, essentially, that we're going to divide power sites into two categories. We're going to have the one category that doesn't even potentially raise an environmental issue or a power issue, and that's sort of with the general mining law. Then we've got this other category that the Secretary identifies as raising a potential problem. And if you're in that potential problem area, you need a license. Yes. I think that's an accurate statement of the law. And so that could be a way that we kind of view this as, like, there's part of the MCRA that's just putting some of the power line areas into the old mining law, and then the other area you need a license. And we're in this part where you need a license. Right. And the reason Congress wanted to do that was they didn't want to stop everyone from locating their claims on these power sites and wait for the Secretary to check a box for each single one because they knew the Secretary didn't have the resources to do that. They just wanted to give the Secretary the option to require a license where it was concluded it might be necessary. And it's sort of like delegating to the agency the authority to divide up the power areas into these two categories, one of which you need a license and the other which you don't. Right. I mean, before the ---- How does that not undermine the whole purpose of the Mining Act or the right to mine as Mr. Lechner was trying to argue? Well, again, Your Honor, Mr. Eno now has, having gone through the PL-359 hearing process and received a general permission, all of the same property rights that he would have if this was located under the regular mining law. There is just this one additional condition put on it. And as I've said, under the Mining Law of 1872, there are already conditions. There are already requirements. There's assessment work requirements. There are already things Mr. Eno has to do to not just establish this property interest but to maintain it. So this is one more, and only where it's a power site. So, Your Honor, turning to the issue of the license, I think ---- oh, here it is. It's all pretty clear, and it turns on the somewhat unintuitive but very broad definition of license given to that ---- the very broad definition of license given to that term by the Administrative Procedure Act. What the Act plainly says is that it encompasses any other form of permission, and what the Mining Claims Rights Restoration Act says is that this was a general permission. So the plain language of the Act suggests this was a license. The courts who have reviewed the APA's definition of license have found that it applies whenever the agency is acting as a gatekeeper. Here, Interior clearly was acting as a gatekeeper. It could have completely prohibited placer mining on this site. So in cases like Air North America v. Department of Transportation or in this Court's decision in ERSAC, what you see is it turns on was the agency a gatekeeper and here it plainly was. There's nothing in the APA's definition or the law generally that supports the idea that a license has to be revocable, and as I understand it, this license is not revocable. And so Mr. Lechner's concerns ---- Sotomayor, that raises a question just kind of hearkening back to law school property law. Is it a license in perpetuity? It's a ---- Yes, Your Honor. It's a property interest in perpetuity. That doesn't violate ---- I mean, it's a ---- That doesn't violate anything in terms of the rule against perpetuities, although I realize that's a State law. I don't believe so. If Mr. Reno is concerned about it, he can always move for a patent and acquire fees equal to the land. Well, but I mean, see, that's kind of the difference, is if you have a mining patent and then you have a property right that's different than a license, and that's why, you know, these rights into perpetuity raised questions. He says, do you know of any other license that basically is in perpetuity? Do you have an answer for that? I don't, Your Honor. Okay. I would also say the idea that no one's ever going to apply to locate ---- is never going to locate claims on these lands because it's a license, it's not really meaningful. Mr. Reno now has the property rights that he would have had under the Mining Law of 1872. And even under the Mining Law of 1872, he's still subject to mining contests. I mean, he has to show location and discovery. If the United States could bring an action or if there were other claimants, they could bring actions and he would have to defend his mining claims. So this really doesn't change any of that. And finally, Your Honors, just turning very briefly, as Mr. Lechner did at the end, this was the Mining Claims Rights Restoration Act calls for public hearing. It doesn't call for a hearing under Section 554 of the APA, what is generally called a formal adjudication. The APA says that its provisions of Section 554 only apply when the statute calls for a formal adjudication. Congress didn't say that this had to be a hearing on the record, which would have meant it was a formal adjudication. Congress didn't include a list of the same sorts of trial-type procedural requirements for this hearing. All it says is that it's a public hearing and nothing more. And in cases like Ardestany by the Supreme Court and in this Court's decision in Agassiz and Grain, found that statutes that just call for public hearings don't require formal adjudication under Section 554. So even if this was not a license, Mr. Eno still wouldn't be entitled to attorney's fees under EJA because EJA only applies to formal adjudications. Let me ask you, still trying to understand the differences, what's happening here under the general mining law and this procedure here. Because in your briefs, you distinguish mining rights under this MCRRA from rights under the general mining law. And you say that the claimant under the MCRRA maintains a possessory interest, I think is what you called it, in the claim after losing at the MCRRA hearing. Is that right? Is that what you said? We did say that, yes, Your Honor. Okay. All right. And while a losing claimant under the general mining law has their claim extinguished, I'm just trying to figure out why is this distinction material when losing at the MCRRA hearing, and so for all those reasons, Your Honors, we'd ask you to affirm the decision of the district court, unless you have anything further. Thank you. Thank you. We took a lot of your time for questions, so I'll give you a minute for rebuttal. I just want to emphasize that the right to mine existed before location. And if location was never made, that right would still exist. And in Ardestani, the court ruled that the Immigration Naturalization Act superseded the APA. That's the basis of that holding, and therefore it doesn't control. But this court has to go back and look at Wong-Sang Young to see that when a 554 applies, and that was the holding in Wong-Sang Young. Thank you. Thank you. Thank you both for your arguments and also for the excellent briefing on this case. The case of Eno v. Sally Jewell is submitted and we're adjourned for the morning.
judges: McKeown, Murguia, Friedland